**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

**SHELIA TATE**                                           **CIVIL ACTION**

**VERSUS**                                              **NO. 11-1212**

**LOUISIANA DEPARTMENT OF**                    **SECTION "H" (3)**
**TRANSPORTATION AND DEVELOPMENT, ET AL.**

<u>**ORDER AND REASONS**</u>

Before the Court is Defendants' Motion to Dismiss.  (Doc. 87.)  For the following reasons the

Motion is GRANTED.

**BACKGROUND**

Plaintiff began her employment with the Louisiana Department of Transportation and

Development ("DOTD") in February of 1993.  In August 2007, Plaintiff was promoted to her current

position where she manages and supervises a staff of seventeen employees.

I.   *The Complaints*

Plaintiff filed her first Complaint on May 23, 2011.  (Doc. 1.)  She alleged that the Defendants violated her rights under Title VII of the Civil Rights Act and  intentionally inflicted emotional distress in violation of Louisiana Civil Code article 2315.  (*Id.* at ¶ 45, 49.)

Plaintiff's First Amended Complaint was filed on September 13, 2011.  (Doc. 29.)  Plaintiff made no new allegations; rather she replaced the State of Louisiana as Defendant with the Louisiana Department of Transportation and Development.  (*Id.*)

Plaintiff's Second Amended Complaint was filed on October 21, 2011.  (Doc. 45.)  Plaintiff added causes of action under 42 U.S.C. §§ 1983 and 1985.  (*Id.*)  Moreover, Plaintiff alleged that Defendants violated Title VII violations for harassment in the form of hostile work environment, harassment based on race and gender, and retaliation for a protected activity.  (*Id.* at ¶ 1a.)  Additionally, the Plaintiff adds supplemental facts concerning the alleged misconduct of her subordinates, Paula Berwick, Stephanie Ducote, Erik Kalivoda, John Rollins, and Jodee Ortego ("Individual Defendants").  (*Id.* at ¶¶ 6-50.)

Plaintiff filed her Third Amended Complaint on December 7, 2011.  (Doc. 66.)  Plaintiff provided more detail regarding individual and official liability.  (*Id.*)  Additionally, Plaintiff added claims against Defendants under the Fifth and Fourteenth Amendments of the United States Constitution. (*Id.*) Lastly, Plaintiff requests injunctive and declaratory relief against all Defendants

in their individual and official capacities.  (*Id.*)

Plaintiff filed her Fourth Amended Complaint ("Fourth Complaint") on April 10, 2012.  (Doc. 80.)  The Fourth Complaint was filed in the record in response to the Court's dismissal of all of Plaintiff's claims.  (*See* Doc. 74.)  Plaintiff's Fourth Complaint seeks relief under: Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 1981, 42 U.S.C. § 1983, 42 U.S.C. § 1985, the Fifth and Fourteenth Amendments fo the United States Constitution, the Family Medical Leave Act of 1993, the General Louisiana Whistle Blower Statute as codified at La. Rev. Stat. § 22:967, *et seq.*, the Public Louisiana Whistle Blower Statute as codified at La. Rev. Stat. § 42:1169, *et. seq.*, and Louisiana Civil Code 2315, *et. seq.*  (Doc. 80 at 1-2.)

## II.    *Factual Allegations*

Plaintiff contends that she has been harassed because of her race.  (Doc. 80 at ¶ 30.) Specifically, Plaintiff states that someone taped a dog collar to her door, someone glued the lock on her door, and that she has received physically threatening emails.  (*Id.*)  Plaintiff avers that management was aware of these things, yet ignored them.  (*Id.*)  Management held a meeting to resolve problems (problems of which Plaintiff does not detail or identify in her Complaint), but instead belittled her in the presence of her subordinates and encouraged them to continue with the  complained of behavior.  (*Id.* at ¶31.)

Plaintiff further alleges that the Defendants have schemed, conspired, and intentionally acted in concert to harass and discriminate against her.  Plaintiff avers that she has "[b]een the

subject of several baseless EEOC complaints designed to harass and intimidate her."  (Doc. 80 at ¶9b.) Plaintiff has been cleared of these complaints, however she is the subject of another lawsuit. (*Id.* at ¶9b-c.)

Plaintiff avers that she has been the victim of discrimination and harassment with the knowledge of her supervisors.  (*Id.* at ¶ 10.)  Petitioner asserts that when she reported performance issues of white subordinates, the white employees would respond with insubordination, racial insults, and harassment. (*Id.* at ¶ 11.) Plaintiff contends that this was done with the full knowledge and support of management.  (*Id.*)  Moreover, Plaintiff states that white subordinates are allowed to disrespect her, curse at her, and intimidate her. (*Id.* at ¶ 14.) Plaintiff avers that because of her race and gender, she is not allowed by upper management to take corrective action against white subordinates when they perform such actions. (*Id.* at ¶12.) Lastly, Plaintiff alleges that upper management, consisting of Eric Kalivoda ("Kalivoda"), Stephanie Ducote ("Ducote"), and John Rollins ("Rollins"), encourages racist behaviors.  (*Id.* at ¶15.)

Plaintiff contends that after she cited a white subordinate on a performance issue, management began an unjustified and bad faith public investigation of her in May, 2010.  (*Id.* at ¶16.)  Plaintiff alleges that the investigation was not handled in accordance with the rules and procedures of the DOTD.  (*Id.* at ¶17.)  Additionally, Plaintiff contends that this was an illegal investigation with insufficient cause.  (*Id.* at ¶ 45.)  On the other hand, Plaintiff avers that investigations of white employees are done swiftly, professionally, and confidentially and that

white employees are presumed innocent, while African Americans and females are presumed guilty. (*Id.* at ¶18.) Moreover, Plaintiff avers that Ducote intentionally prolonged the investigation to ruin Plaintiff's character.  (*Id.*)

Moreover, Plaintiff avers that she has had bogus and unjustified investigations launched against her when she questioned a white supervisor's hiring selections.  (*Id.* at ¶28.)  Specifically, Plaintiff asserts that she received emails of a threatening and harassing tone.  (*Id.*)  Plaintiff alleges that the investigations have caused her emotional distress, embarrassment, and humiliation.  (*Id.*)  Plaintiff contends that because of her race or gender Rollins and Ducote acted illegally through the use of their positions to further harassment.  (*Id.* ¶32.)  Plaintiff alleges that as a result of this investigation she was accused of committing payroll fraud. (*Id.* at ¶33.)  Plaintiff contends that this is motivated solely because of her race and gender and for retaliation.  (*Id.*)

Plaintiff alleges that Berwick and the supervisors conspired to hire pre-selected applicants and to intentionally deny equal opportunity to all applicants.  (*Id.* at ¶41.)  Plaintiff contends that Berwick intentionally ignores departmental policies and procedures to circumvent hiring and employment guidelines and has filed several complaints against her.  (*Id.* at ¶45.)  Specifically, Berwick has: filed suit against Plaintiff alleging that she made racially derogatory comments and committed payroll fraud, filed a complaint alleging Plaintiff stalked employees and falsified hiring documents, and Berwick filed a complaint alleging that Plaintiff harassed and discriminated against her.  (*Id.*)  Plaintiff alleges that the sole purpose of these complaints was to harass her.  (*Id.*)

Plaintiff further alleges that Berwick has: reported personal information concerning her restroom movements, disseminated her private medical information, refused to follow Plaintiff's instructions, spread rumors concerning Plaintiff's family, mocked Plaintiff to her supervisor, falsely told supervisors that Plaintiff was related to an applicant, and worked with supervisors to intentionally exclude and discriminate against black employees.  (*Id.*)

Plaintiff contends that Ortego has also acted in concert with management through the filing of frivolous, illegal, and premature charges against her.  (*Id.* at ¶43.)  Ortego has filed one EEOC complaint, a DOTD complaint concerning harassment, and a DOTD complaint concerning intimidation.  (*Id.*; *see also id.* at ¶45.)  Ortego has also filed criminal charges against Plaintiff alleging stalking.  (*Id.* at ¶45.) Plaintiff alleges that these complaints are baseless and amount to harassment.  (*Id.* at ¶43.)

Plaintiff avers that other subordinate employees have committed illegal actions and have been guilty of misconduct.  (*Id.* at ¶44.)  Plaintiff contends that these actions were done in concert with management.  (*Id.*)  Specifically, Plaintiff cites that employees refuse to report or return to their job post, take excessive breaks, refuse to change work schedules, refuse to accommodate leave requests of other employees, and refuse to observe break times.  (*Id.*) Petitioner alleges that because she attempted to take corrective action, and upper management did not allow her to do so, this comprises a whistle blower complaint for which Plaintiff was retaliated against.  (*Id.*)

Plaintiff avers that the DOTD has illegally and without justification demanded medical

information in violation of the Family and Medical Leave Act.  (*Id.* at ¶23.)  Additionally, Plaintiff

avers that she was followed home and watched while she was out on Family Medical Leave.  (*Id.*

at ¶25.)  Lastly, Plaintiff contends that she is the only employee out of three hundred and fifty that

receives harassment regarding family leave.  (*Id.* at ¶27.)

III.    *Motions to Dismiss*

On September 2, 2011 Defendants filed a Motion to Dismiss.  (Doc. 21.)  After Plaintiff filed

her Second Amended Complaint, Defendants filed another Motion to Dismiss on November 1,

2011.  (Doc. 49.)  On March 20, 2012 the Court held oral argument on the Motions.  (Doc. 74.)  The

Court, orally giving reasons, granted Defendants' Motion and dismissed all of Plaintiff's claims.  (*Id.*)

Plaintiff was allowed to amend her Complaint with relation to the following claims: intentional

infliction of emotional distress, conspiracy to commit intentional infliction of emotional distress,

section 1983 claims against the individual defendants, and section 1983 and 1985 claims against

the DOTD.  On April 10, 2012 Plaintiff filed her Fourth Amended Complaint.  (Doc. 80.)

On May 16, 2012 Defendants filed a Motion to Dismiss pursuant to Federal Rules of Civil

Procedure 12(b)(5) and 12(b)(6).  (Doc. 87.)  On May 29, 2012 Plaintiff opposed the Motion.  (Doc.

89.)  On June 5, 2012 Defendants filed their reply.  (Doc. 92.)  The Motion was taken under

submission on June 6, 2012.

**LEGAL STANDARD**

I.     *Federal Rule of Civil Procedure 12(b)(1)*

A motion to dismiss filed under Rule 12(b)(1) of the Federal Rules of Civil Procedure challenges the subject matter jurisdiction of a federal district court. "A case is properly dismissed for lack of subject matter jurisdiction when the court lacks the statutory or constitutional power to adjudicate the case." *Home Builders Ass'n of Miss., Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998). The basic statutory grants of federal court subject-matter jurisdiction are contained in 28 U.S.C. §§ 1331 and 1332.

In considering a Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction, "a court may evaluate (1) the complaint alone, (2) the complaint supplemented by undisputed facts evidenced in the record, or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Den Norske Stats Oljeselskap As v. Heeremac V.O.F.*, 241 F.3d 420, 424 (5th Cir. 2001). The party asserting jurisdiction bears the burden of proof on a Rule 12(b)(1) motion to dismiss and must show that jurisdiction exists. *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001).

II.    *Federal Rule of Civil Procedure 12(b)(6)*

To survive a Rule 12(b)(6) motion to dismiss, a plaintiff must plead enough facts "to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 547). A claim is "plausible on its face" when the pleaded

facts allow the court to "[d]raw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S. Ct. at 1949. A court must accept the complaint's factual allegations as true and must "draw all reasonable inferences in the plaintiff's favor." *Lormand v. U.S. Unwired, Inc.*, 565 F.3d 228, 232 (5th Cir.2009). The Court need not, however, accept as true legal *conclusions* couched as factual allegations. *Iqbal*, 129 S. Ct. at 1949–50.

To be legally sufficient, a complaint must establish more than a "sheer possibility" that the plaintiff's claims are true. *Id.* "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action'" will not suffice. Iqbal, 129 S.Ct. at 678 (quoting *Twombly*, 550 S. Ct. at 1955). Rather, the complaint must contain enough factual allegations to raise a reasonable expectation that discovery will reveal evidence of each element of the plaintiffs' claim. *Lormand*, 565 F.3d at 255–57. The Court's review "is limited to the complaint, any documents attached to the complaint, and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint." *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir.2010) (citing *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498–99 (5th Cir.2000)).

## LAW AND ANALYSIS

In an attempt to make the record clear, and in an abundance of caution, the Court will address all of Plaintiff's claims.  For the following reasons, all of Plaintiff's claims are dismissed.

I.      *Title VII*

Title VII states that "it shall be unlawful employment practice for an employer . . . to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1).  For the reasons that follow, the Court finds that Plaintiff fails to state a claim upon which relief can be granted.  Accordingly, Plaintiff's Title VII claim is dismissed.

A.      <u>Individual Defendants</u>

"The law is well-settled in the Fifth Circuit that employees cannot be sued in their individual capacities under Title VII."  *Indest v. Freeman Decorating, Inc.*, No. Civ. A. 95-16, 1995 WL 366484, at *1 (E.D. La. June 20, 1995) (citing *Grant v. Lone Star Co.*, 21 F.3d 649, 653 (5th Cir. 1994)).  This is because "[T]itle VII does not permit the imposition of liability upon individuals unless they meet Title VII's definition of 'employer.'" *Grant*, 21 F.3d at 653.  An employer is defined under Title VII as any "person engaged in an industry affecting commerce who has fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year, and any agent of such person."  42 U.S.C. § 2000e-2(b).  A supervisor may only be deemed an agent of the employer when he or she is acting in his official capacity.  *Harvey v. Blake*, 913 F.2d 226, 227 (5th Cir. 1990).  As a result, a plaintiff may only file suit against an agent in his official capacity.  *Id.* at 228.  Accordingly, Plaintiff's Title VII claims against Berwick, Rollins, Kalivoda, Ortego, and Ducote in their individual capacities are dismissed.

Defendants further argue that "although Title VII provides that agents of employers may be sued in their official capacities, a plaintiff cannot maintain an action against both a corporation and its officer in their official capacity." (Doc. 21-1 at 7.) Plaintiff asserts that "Title VII recognizes liability on individual actors who act in concert with the employer, in the course of the employer's business to violate one's rights under Title VII." (Doc. 89 at 3.)

The Fifth Circuit has "[c]oncluded that outside of an action against an officer personally, a plaintiff does not have an action against both the corporation and its officer in an official capacity." *Indest v. Freeman Decorating, Inc.*, 164 F.3d 258, 262 (5th Cir. 1999) (quoting *Sims v. Jefferson Downs Racing Assoc., Inc.*, 778 F.2d 1068, 1081 (5th Cir. 1985) (quotations omitted)). Essentially, a Title VII plaintiff cannot bring an action against both a corporation and its official agent because the corporation could be held liable twice for the same act. *Indest*, 164 F.3d at 262 (quoting *Allen v. Tulane Univ.*, No. Civ. A. 92-4070, 1993 WL 459949 (E.D. La. Nov. 2, 1993)) (quotations omitted). Ultimately, "[a] party may not maintain a suit against both an employer and its agent under Title VII." *Indest*, 164 F.3d at 262.

On the other hand, "an 'exception' to immunity exists for suits seeking prospective injunctive relief against state employees in their official capacities." *Carpenter v. Miss. Valley State Univ.*, 807 F. Supp. 2d 570, 581 (N.D. Miss. 2011). "Under *Ex Parte Young*, 209 U.S. 123 (1908), the exception applies only if a suit alleging violations of federal law is brought against individual persons in their official capacities as agents of the state, and the relief sought [is] declaratory or

injunctive in nature and prospective in effect." *Carpenter*, 807 F. Supp. 2d at 581 (quoting *Aguilar v. Tex. Dep't of Criminal Justice*, 160 F.3d 1052, 1054 (5th Cir. 1998)) (quotations omitted).   In essence, when an individual acting in his or her official capacity violates the Constitution, the official is not acting under the authority of the state and therefore that official is not protected by sovereign immunity.  *Va. Office for Prot. and Advocacy v. Stewart*, 131 S. Ct. 1632, 1638 (2011).

Plaintiff alleges that Defendants' Title VII violations have caused her "[l]oss of pay, loss of benefits, great emotional, mental, psychological and physical harm, loss of income, loss of family, and loss of enjoyment of life, for which defendants are liable in compensatory, punitive, exemplary, legal, equitable, nominal and all other damages that this Court deems necessary and proper." (Doc. 80 at ¶51.) This relief is clearly barred against the individual capacity in both their official and individual capacities.  Plaintiff further "[p]rays for injunctive and declaratory relief from the acts of the Agency, management, and employees as detailed above."  (*Id.* at ¶52.) To the extent that Plaintiff can show that she is entitled to such relief, discussed *infra.*, the individual defendants are not immune from suit in their official capacity.

B.    Discrimination Based on Race and Gender

A Title VII plaintiff must carry the initial burden of establishing a *prima facie* case of discrimination. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973).  To establish a prima facie case of discrimination, the plaintiff must prove that (1) she was a member of a protected class; (2) that she was qualified for the position at issue; (3) that she was discharged or suffered

some adverse employment action by the employer; and (4) that she was replaced by someone outside of the protected group or was treated less favorably than other similarly situated employees outside of the protected group. *McCoy v. City of Shreveport*, 492 F.3d 551, 556 (5th Cir. 2007). "If the plaintiff makes a prima facie showing, the burden then shifts to the employer to articulate a legitimate, nondiscriminatory reason for its employment action." *Id.* If the employer meets its burden, then the plaintiff bears the ultimate burden of proving that the employer's proffered reason is a pretext for the real discriminatory purpose. *Id.* "To carry this burden, the plaintiff must rebut each nondiscriminatory . . . reason articulated by the employer." *Id.*

Defendants argue that no adverse employment action has been taken against the Plaintiff. (Doc. 21-1 at 9.) Defendants note that it is uncontested that Plaintiff was promoted to her current position and retains that position today. (*Id.*) Thus, Defendants aver that Plaintiff is unable to maintain an action for discrimination under Title VII. Plaintiff opposes Defendants arguments and states that the alleged harassment constitutes "[a]dverse employment actions in that they sufficiently alter the terms and conditions of petitioner's employment." (Doc. 89 at 5.)

Plaintiff is an African-American female and therefore belongs to two protected classes. There has been no argument that Plaintiff is not qualified for the position for which she holds. Thus, the Court must focus its inquiry on whether Plaintiff's allegations are sufficient to show that she has suffered some adverse employment action.

The Fifth Circuit has a stricter view of what constitutes an adverse employment action than

other circuits.  *See Burger v. Cent. Apartment Mgmt.*, 168 F.3d 875, 878 (5th Cir. 1999).  The Fifth

Circuit has held that "Title VII was only designed to address *ultimate* employment decisions, not

to address every decision made by employers that arguably might have some tangential effect

upon those ultimate decisions."  *Burger*, 168 F.3d at 878 (emphasis in original) (quoting *Mattern*

*v. Eastman Kodak Co.*, 104 F.3d 702, 707 (5th Cir. 1997)) (internal quotations omitted).  "Under

Title VII principles . . . an employment action that does not affect job duties, compensation, or

benefits is not an adverse employment action."  *Pegram v. Honeywell, Inc.*, 361 F.3d 272, 282 (5th

Cir. 2004) (quoting *Banks v. East Baton Rouge Parish Sch. Bd.*, 320 F.3d 570, 575 (5th Cir. 2003))

(internal quotations omitted).  Demoting, hiring, granting leave, discharging, promoting, and

compensating are all actions that qualify as an ultimate employment decision.  *Pegram*, 361 F.3d

at 282 (citing *Felton v. Polles*, 315 F.3d 470, 486 (5th Cir. 2002), *Sharp v. City of Houston*, 164 F.3d

923, 933 n.21 (5th Cir. 1999)); *see also Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 764 (1998)

(actionable adverse employment actions are generally limited to tangible employment action that

constitute a significant change in employment status).  Ultimately, "[e]mployment actions are not

adverse where pay, benefits, and level of responsibility remain the same."  *Watts v. Kroger Co.*, 170

F.3d 505, 512 (5th Cir. 1999).

Plaintiff's Fourth Complaint is completely devoid of any contention that she has suffered

an adverse employment action.  It is uncontested that Plaintiff has been employed by DOTD since

1993 and was promoted to her current position in August of 2007.  Her Fourth Complaint is barren

-14-

of any allegation that she has been demoted, fired, discharged, and/or had a reduction in compensation.  On the other hand, Plaintiff does make allegations concerning leave.  (*See* Doc. 80 at ¶¶ 1f, 23-27, 33, 35, 45A, 45C, 45E.)  Specifically, Plaintiff contends that her supervisors have requested she turn over medical information, that white employees can take leave and it is never questioned, that she was watched at her home while on leave, and that she is the only employee that receives harassment regarding family leave.   (*Id.* at ¶¶ 23-27.)  Even assuming these allegations are true, there has been no adverse employment action.  Nowhere does Plaintiff allege that she has been refused leave or had leave taken away from her.  Instead, Plaintiff has alleged to have been merely questioned and supervised.  This does not meet the standards required to prove an adverse employment action under Title VII.

     C.    <u>Hostile Work Environment</u>

     A plaintiff may establish a violation of Title VII by proving that discrimination based upon the plaintiff's race has created a hostile or abusive work environment.  *See Ramsey v. Henderson*, 286 F.3d 264, 268 (5th Cir. 2002) .  To establish a hostile work environment claim, a plaintiff must prove (1) that she belongs to a protected group; (2) that she was subjected to unwelcome harassment; (3) the harassment complained of was based on race; (4) the harassment complained of affected a term, condition, or privilege of employment, and (5) the employer knew or should have known of the harassment in question and failed to take prompt remedial actions.  *Ramsey*, 286 F.3d at 268 (5th Cir. 2002).  If the harassment is allegedly committed by a supervisor with

immediate or successively higher authority over the plaintiff employee, then the employee need only satisfy the first four of the elements. *Faragher v. City of Boca Raton*, 524 U.S. 775, 807 (1998).

To support a hostile work environment claim, a plaintiff must "subjectively perceive the harassment as sufficiently severe or pervasive, and this subjective perception must be objectively reasonable." *Frank v. Xerox Corp.*, 347 F.3d 130, 138 (5th Cir. 2003) (citing *Harris v. Forklift Sys., Inc.*, 510 U.S. 17 (1993)).   To determine "[w]hether a workplace constitutes a hostile work environment, courts must consider the following circumstances: the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Ramsey*, 286 F.3d at 268 (quoting *Walker v. Thompson*, 214 F.3d 615, 624 (5th Cir. 2000)) (internal quotations omitted).   Ultimately, "employees who are subjected to insults, epithets, and other workplace degradations often see their claims rejected under this demanding standard." *Willis v. Williamson*, No. 12-cv-2069, 2012 WL 6929339, at *4 (W.D. La. Nov. 19, 2012).

Defendants note that Plaintiff retains her position as supervisor and has not been terminated, demoted, or fired.   Defendants argue that Plaintiff does not allege any adverse employment action has been taken against her.  (Doc. 87-1 at 2.)  Moreover, Defendants highlight that Plaintiff never states any alleged harassment has negatively affected her work performance. (*Id.*)  Defendants note that while Plaintiff alleges harassment, she never states what "racial insults" were directed towards her.  (*Id.*)

-16-

Plaintiff, on the other hand, argues that the harassment alleged constitutes adverse employment action in that Defendants sufficiently altered the terms and conditions of her employment.  (Doc. 89 at 5.)  Plaintiff cites *Hatley v. Hilton Hotels Corp.*, 308 F.3d 473 (5th Cir. 2002), a sexual harassment case, in support of her contention.  (*Id.*)  In *Hatley*, the jury found that the complained of harassment was sufficiently pervasive to alter her conditions of employment, the District Court, however, entered judgment as a matter of law on behalf of the employer.  The Circuit Court reversed finding that the Plaintiff submitted sufficient evidence to support the finding of the jury.   The Court  noted that evidence revealed harassment that consisted of repeated inappropriate touching, vulgar comments, propositioning and physical aggression by the complainants supervisors.  Thus, in accordance with *Hatley*, Plaintiff contends that this Court should also find harassment.   Specifically, Plaintiff argues that the *Hatley* plaintiffs sexual harassment was not nearly as pervasive, invasive, or threatening as alleged in the instant matter. (*Id.*)  Moreover, Plaintiff refers the Court to Exhibits A, B, and C for proof of the effects of such alleged harassment on the Plaintiff. (*Id.* at 7.)  Plaintiff, however, did not attach any exhibits. Plaintiff further alleges that the management not only knew about the harassment, but participated in the harassment.  (*Id.*)

Plaintiff is an African American female and therefore belongs to two protected groups. Moreover, the Court finds that the allegations in Plaintiff's Fourth Complaint are sufficient to show that Plaintiff was the recipient of unwelcome attention.   Accordingly, the Court will focus on

whether Plaintiff can satisfy the third and fourth elements -whether the alleged harassment was based on race and whether the alleged harassment affected a term, condition, or privilege of employment.

### 1.      Harassment Based On Race

The Court finds that the Fourth Complaint is rife with vague and conclusory assertions of racial animus.  Plaintiff alleges that she "has been the victim of racial discrimination and on-going harassment over a significant period of time with the knowledge of her supervisors who . . . encourage the racial harassment, retaliation, and discrimination." (Doc. 80 at ¶10.)  In support of this conclusion, Plaintiff makes the following allegations.

First, when Plaintiff contends that when she would cite the performance issues of a white subordinate the white subordinate would respond with insubordination, racial insults, and harassment with the knowledge of management (*Id.* at ¶11).  Plaintiff, however, fails to state facts alleging what performance issues, what the subordinate would respond with, what the insults were and how were they in relation to her race, and lastly how the management knew of her subordinate doing such things.

Second, Plaintiff alleges that she is not allowed to take corrective action against white subordinates, as compared with the white supervisors (*Id.* at ¶12).  Plaintiff's Complaint fails to articulate any facts beyond this conclusory statement.  Specifically, Plaintiff does not allege what

corrective action she is not allowed to take and what corrective action white supervisors are allowed to take.  The Complaint is devoid of any knowledge of what position the white supervisors hold and if these white supervisors hold her same position, are ranked above her, or below her.

Third, Plaintiff complains that white subordinates are allowed to disrespect, curse, and intimidate Plaintiff (*Id.* at ¶14).  Plaintiff's Complaint fails to identify, however, who the white subordinates were, how they disrespected, cursed, and/or intimidated her, when they did such things, the frequency of such conduct, and/or where these things took place.  Plaintiff alleges nothing beyond this conclusory and bald allegation.

Fourth, Plaintiff contends that upper management insinuates and encourages racist beliefs (*Id.* at ¶15).  While the Court is mindful that someone in a lower position than management may not have details as to what happens behind closed doors, Plaintiff still fails to allege what actions she saw, when such actions such place, or how frequent such actions took place.  Thus, even understanding Plaintiff's lack of privity to upper management, Plaintiff still fails to allege even minimal facts to support such a conclusory statement.

Fifth, Plaintiff avers that subordinates and management have intentionally participated in, encouraged, instigated, and helped to maintain discriminatory practices and harassment against the Petitioner based on race (*Id.*).  Plaintiff, however, fails to identify what discriminatory practices and harassment the subordinates and management have intentionally participated in.  The Complaint is devoid of any facts to support Plaintiff's contention.

Sixth, Plaintiff argues that investigations into Plaintiff were not handled under the rules of the DOTD or EEOC, while investigations of whites are (*Id.* at ¶17).  While Plaintiff does complain that the agency has illegally solicited witnesses and asked leading questions in support of such contention.  (Id. at ¶20.)  Plaintiff, however, fails to who these witnesses are, what the leading questions were, and how this tactic was illegal.  Simply stating that black employees are presumed guilty while white employees are presumed innocent (*Id.* at ¶18) is insufficient to support Plaintiff's bald assertions without any further facts in support.

Seventh, Plaintiff complains that white employees are allowed to take family leave without being questioned.  She alleges that she was followed while on leave (*Id.* at ¶¶24-25).  Plaintiff fails to identify any facts to show that   white employees exercised family leave without being questioned.   Plaintiff alleges that she is the sole employee that was questioned regarding her exercise of medical leave; this blanket assertion with no supporting facts fails to provide any indication that this questioning was related to racial animus and is insufficient to support a claim.

Eighth, Plaintiff asserts that she was mistreated because she questioned a white supervisor's hiring selection.  (*Id.* at ¶28.)  Plaintiff, however, states that the human resources manager told her that he was in the best position to find the correct candidates.  Plaintiff neither alleges that she is a member of human resources nor in a position to comment upon the hiring practices of the DOTD.  Allegations that a co-worker or supervisor does not acknowledge a peer or subordinates opinion is insufficient to raise an actionable claim.

Ninth, Plaintiff alleges that she had a dog collar taped to her door, had the lock on her door glued, and has received threatening emails because of her race. (*Id.* at 30.) Plaintiff fails, however, to provide any additional facts which reveal why plaintiff concludes these actions were the result of racial animus. Plaintiff further fails to provide any substance of the physically threatening emails.

Tenth, Plaintiff contends that allegations and a subsequent investigation into Plaintiff concerning payroll fraud was motivated by race. (*Id.* at ¶ 33.) Moreover, Plaintiff complains that after management determined that she was not properly on leave, her supervisor recommended disciplinary action. Plaintiff concludes this action was because of her race. (*Id.* at ¶35.) Plaintiff's Complaint, however, is devoid of any facts to support such a claim. This Court believe that the conclusion drawn by Plaintiff is illogical and insufficient to support a claim.

Eleventh, Plaintiff alleges that Berwick was encouraged to participate in an illegal investigation as an intentional form of racial harassment. (*Id.* at ¶39.) Additionally, Plaintiff complains that various investigations and complaints made against Plaintiff were due to race. (*Id.* at ¶45.) Plaintiff, however, states that she was the subject of investigations due to complaints about her from other employees. Plaintiff cites to no specific behavior or animus as to how these investigations went beyond those of what her co-workers complained, e.g. how they had to do with her race.

Thus, while race is consistently listed as a motivating factor, Plaintiff does not provide any

factual support for these allegations.  Plaintiff continually references the problems at work as due to her race, however does not provide any specific facts for which she bases these conclusions. While Plaintiff does cite few specific actions that took place - that a dog collar was taped to her door, that the lock on her door was glued, and that she was under investigation.  Without any facts, however,  these are insufficient to support a conclusion that the harassment based on race was so severe as to potentially create a hostile work environment.

Ultimately, the Fourth Complaint is void of anything concrete, beyond Plaintiff's conclusory statements, that can support such allegations.  Even taking these as truth, Plaintiff fails to allege that such specific incidents were because of her race.  Accordingly, Plaintiff's Fourth Complaint falls short of showing that the harassment was based on race.

### 2.   Term, Condition, or Privilege of Employment

Even if Plaintiff had sufficiently shown that the alleged harassment was due to her race, Plaintiff fails to establish that such harassment affected a term, condition, or privilege of her employment.

Violations of Title VII are not limited to economic or tangible discrimination.  *Meritor Savings Bank FSB v. Vinson*, 477 U.S. 57, 64 (1986).  On the other hand, "for harassment on the basis of race to affect a term, condition, or privilege of employment, as required to support a hostile work environment claim under Title VII, it must be sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Ramsey*,

286 F.3d at 268 (quoting *Harris*, 510 U.S. at 21) (internal quotations omitted). "For a hostile working environment to be deemed sufficiently hostile, all of the circumstances must be taken into consideration." *Ramsey*, 286 F.3d at 268.

The Court is directed to look to the frequency of the discriminatory conduct. This inquiry presents an issue for the Plaintiff as Plaintiff's Fourth Complaint lacks specificity concerning the dates, times, or context in which the alleged harassment occurred. This Court acknowledges that "discriminatory incidents outside of the filing period may be relevant background information to current discriminatory acts," *Ramsey*, 286 F.3d at 268 (citing *United Air Lines, Inc. v. Evans*, 431 U.S. 553, 558 (1977)). A court must distinguish, however, between the harassing conduct occurring within the actionable period and that which can only be viewed as relevant background conduct. *Ramsey*, 286 F.3d at 269. Plaintiff's Fourth Complaint is wrought with allegations, however very few provide a time period in which they can be adequately assessed.

Plaintiff has the burden of showing that the defendants are liable for the claims that it alleges. *Iqbal*, 129 S.Ct. at 1949. While this Court assumes Plaintiff's allegations to be truth, it is nearly impossible to tell if the allegations should be considered as relevant background conduct or actionable conduct. "The continuing violation doctrine does not automatically attache in hostile work environment cases, and the burden remains on the employee to demonstrate an organized scheme led to and included the present violation." *Celestine v. Petroleos de Venezuela SA*, 266 F.3d 343, 352 (5th Cir. 2001) (citing *Huckabay v. Moore*, 142 F.3d 233, 239 (5th Cir. 1998)). "Where

a pattern of harassment spreads out over years, and it is evident long before the plaintiff sues that she was a victim of actionable harassment, she cannot reach back and base her suit on conduct that occurred outside the statute of limitations." *Celestine*, 266 F.3d at 352 (citing *Hardin v. S.C. Johnson & Son, Inc.*, 167 F.3d 340, 344 (7th Cir. 1999)). Ultimately, the burden is upon the plaintiff to show that she suffered race-based harassment prior and during the filing period, that the incidents of harassment were related, and that the harassment was pursuant to an organized scheme. *Huckabay*, 142 F.3d at 238.

This Court finds that Plaintiff is in the best position to provide such information, yet fails to do so. The Complaint is devoid of facts and dates sufficient to adequately assess when the majority of these alleged actions took place. The law is clear that Plaintiff cannot base her suit on conduct that occurred outside of the appropriate time period. By failing to provide the dates in which the alleged misconduct occurred, however, Plaintiff asks the Court to do just that. While the information alleged by Plaintiff may be relevant for context, it is inappropriate, without knowledge of the specific date, to assess a claim any further. Accordingly, Plaintiff fails at meeting her burden.

Although Plaintiff fails at meeting her burden of providing the dates in which the alleged conduct occurred, "whether an environment is objectively hostile or abusive is determined by considering the totality of the circumstances." *Harris*, 510 U.S. at 23. Accordingly, the Court will further consider the severity of the conduct, whether it was physically threatening or humiliating as opposed to an offensive utterance, and whether it unreasonably interfered with Plaintiff's work

-24-

performance.  *Ramsey*, 286 F.3d at 268

First, the Court will consider the severity of the conduct.  A majority of Plaintiff's allegations focus on the investigations and complaints that were directed towards her.  "False accusations, criticism, and investigations are not adverse employment actions."  *Ellis v. Crawford*, No. Civ.A. 3:03 CV 2416D, 2005 WL 525406, at *8 (N.D. Tex. Mar. 3, 2005) (citing *Breaux v. City of Garland*, 205 F.3d 150, 157-58, n.14 (5th Cir. 2000)).  Plaintiff further alleges that as a result of the investigations she was humiliated and that disciplinary action was recommended.  The Fifth Circuit has made clear, however, that "[e]ven the capacity of an action to stigmatize an employee is inadequate to make it an adverse employment action."  *Ellis*, 2005 WL 525406, at *8 (N.D. Tex. Mar. 3, 2005) (citing *Breaux*, 205 F.3d 150 at 157-158, n. 14) ("Stigma by itself, without an impact on one's employment, does not constitute an adverse employment action").  Ultimately, Plaintiff does not allege that disciplinary action was actually taken, that the investigations resulted in altering a condition of employment, or that there was a denial of an employment benefit.  Without some deprivation an investigation, accusation, or criticism, even if false, is not sufficient to qualify it as an adverse employment action.  Accordingly, the conduct of which Plaintiff complains of is not sufficiently severe or pervasive.

Next, the Court will consider whether the conduct was physically threatening or humiliating, or a mere offensive utterance.  Plaintiff's Fourth Complaint is devoid of any allegations of physical threats.  Plaintiff does, however, allege that offensive slurs were proffered, that she received

threatening emails, and that she was humiliated as a result of investigations and complaints lodged by other employees.  The Fourth Complaint, however, fails to allege facts in support of these allgations.  Assuming, *arguendo*, that said statements were in fact offensive, "these circumstances alone cannot support a hostile work environment claim absent some objectively detrimental impact on [Plaintiff's] work performance."  *E.E.O.C. v. Nexion Health at Broadway, Inc.*, 199 F. App'x 351, 354 (5th Cir. 2006).  As noted previously, Plaintiff's Fourth Complaint is deficient of a condition of her employment being affected.  Although Plaintiff was subjectively affected by such things, the law is clear in that it must be both subjectively and objectively severe and pervasive.  Plaintiff cannot meet this burden.

Ultimately, "[w]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged - but not shown- that the pleader is entitled to relief."  *Ashcroft*, 556 U.S. at 678 (quoting Fed. R. Civ. P. 8(a)(2)) (internal quotations omitted).  Although the Court has previously dismissed Plaintiff's Title VII claims with prejudice, the Court has further outlined why Plaintiff's Fourth Complaint is insufficient to show that Defendants violated Title VII.  Accordingly, Plaintiff's Title VII claims are dismissed.

D.    Retaliation

Title VII prohibits an employer from discriminating against an employee who has opposed an employment practice made unlawful under Title VII.  42 U.S.C. § 2000e-3(a).  "To establish a prima facie case of retaliation, the plaintiff must establish that (1) [she] participated in an activity

protected by Title VII; (2) [her] employer took an adverse employment action against [her]; and (3) a causal connection exists between the protected activity and the adverse employment action." *McCoy*, 492 F.3d at 556-7.  "Protected activity is defined as opposition to any practice rendered unlawful by Title VII, including making a charge, testifying, assisting, or participating in any investigation, proceeding, or hearing under Title VII." *Ackel v. Nat'l Communications, Inc.*, 339 F.3d 376, 385 (5th Cir. 2003).  The antiretaliation provision of Title VII "[c]overs those (and only those) employer actions that would have been materially adverse to a reasonable employee or job applicant." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 57 (2006).  "An employment action is not materially adverse if it amounts to only petty slights or minor annoyances that often take place at work and that all employees experience."  *Williams v. Recovery Sch. Dist.*, 859 F. Supp. 2d 824, 831 (E.D. La. Mar. 15, 2012) (quoting *Burlington N. & Santa Fe Ry. Co.*, 548 U.S. at 68) (internal quotations omitted).

Plaintiff alleges that Defendants continuously violated her rights subsequent to the filing of the EEOC charge and as a part of retaliation for protected EEOC activity.  (Doc. 80 at ¶15c.) Defendants assert that Plaintiff fails to state a claim as she has not alleged that any adverse employment action has been taken against her.  (Doc. 21-1 at 10) (citing *Griffith v. La.*, Civ. A. 11-245, 2011 WL 3490006 (E.D. La. Aug. 10, 2011) (an adverse employment action is one involving "hiring, granting leave, discharging, promoting, and compensating")).

This Court finds that Plaintiff fails to allege employer action that is materially adverse to a

reasonable employee. *Burlington Northern* makes clear that "the antiretaliation provision protects an individual not from all retaliation, but from retaliation that produces any injury or harm." 548 U.S. at 67.  This must be assessed objectively.  *Id.* at 68 ("we refer to reactions of a *reasonable* employee because we believe that the provision's standard for judging harm must be objective"). Plaintiff makes numerous conclusory allegations, none of which involve her suffering harm other than those ordinary tribulations of the workplace.  Courts have held that personality conflicts at work that generate antipathy and snubbing by supervisors and co-workers are not actionable because these are not actions that are likely to deter victims of discrimination from complaining to the EEOC, the courts, and their employers.  *Id.* (internal citations and quotations omitted).  The Court finds that these are just the type of allegations that Plaintiff makes here.

Ultimately, because Plaintiff fails to demonstrate that the employer's actions could be materially adverse to a reasonable employee, she cannot meet the second element required to prove a *prima facie* retaliation claim.  Accordingly, Plaintiff's retaliation claim is be dismissed.

II.    *Section 1981, 1983, and 1985 Claims*

Plaintiff alleges that the Defendants, by committing intentional and negligent acts, have violated Plaintiffs rights under 42 U.S.C. §§ 1981, 1983, and 1985.  The Court finds that these claims fail as a matter of law.  Accordingly, these claims are dismissed.

Defendants argue that the Court was correct in dismissing these claims previously. Defendants contend that Plaintiff's 1981, 1983, and 1985 claims must be dismissed because the

Court does not have proper subject matter jurisdiction.  Defendants aver that both DOTD and the Individual Defendants in their official capacity are immune from suit under the Eleventh Amendment.  Defendants further assert that should the Court find the Eleventh Amendment inapplicable, Plaintiff's claims still fail as she does not meet her burden of stating a claim upon which relief can be granted.

Plaintiff counters that the Eleventh Amendment permits suits for prospective injunctive relief and declaratory relief against state officials acting in violation of federal law.  Moreover, Plaintiff asserts that she has alleged sufficient facts for a constructive discharge claim.  Plaintiff insists that her allegations are clear, specific, and sub-headed for clarity.

The Eleventh Amendment sovereign immunity bars all individuals from suing a State for money damages in federal court.  *Frew ex rel. Frew v. Hawkins*, 540 U.S. 431, 437 (2004).  Additionally, it bars all injunctive or declaratory suits against the state and its departments.  *See Pennhurst State School & Hosp. v. Halderman*, 465 U.S. 89, 100-01 (1984); *see also Cory v. White*, 457 U.S. 85, 91 (1982).  Essentially, unless the state consents, the Eleventh Amendment prohibits suit against a state.  *Daigle v. Gulf State Utilities Co., Local Union No. 2286*, 794 F.2d 974, 980 (5th Cir. 1986).  Sovereign immunity encompasses suits against state agencies and state officials.  *Id.* (suits against a state agency are prohibited); *Will v. Mich. Dept. of State Police*, 491 U.S. 58, 71 (1989) (suit against a state official is in reality a suit against the state itself).  Thus, absent an express abrogation of Congress or a waiver by the state, the Eleventh Amendment precludes suits

in which a state agency is named as a defendant.  *Pennhurst State Sch. & Hosp.*, 465 U.S. at 100.

The Louisiana DOTD is an agency of the state.  Accordingly, the Eleventh Amendment's immunity attaches to this action.  This immunity, however, is not absolute.  *See Meyers ex rel. Benzing v. Tex.*, 410 F.3d 236, 241 (5th Cir. 2005).  There are three ways in which the immunity can be overcome: (1) waiver; (2) abrogation; (3) individual defendants and the *Ex Parte Young* doctrine.

The first of these asks the court to consider whether the state has waived its Eleventh Amendment immunity.  A state is considered to have waived its immunity if it voluntarily invokes federal-court jurisdiction or makes a clear declaration that it intends to submit itself to federal-court jurisdiction.  *Id.* (citations omitted).  Louisiana has not waived its Eleventh Amendment immunity.  *See* La. R.S. § 13:5106(a) ("[n]o suit against the state or a state agency or political subdivision shall be instituted in any court other than a Louisiana state court.").  Accordingly, this exception does not apply.

Second, Congress can abrogate a state's Eleventh Amendment immunity without a state's consent.  *Carpenter v. Miss. Valley State Univ.*, 807 F. Supp. 2d 570, 584 (N.D. Miss. Aug. 10, 2011) (citing *Seminole Tribe v. Fla.*, 517 U.S. 44, 54 (1996)).  Congress may abrogate a state's Eleventh Amendment immunity if Congress: (1) unequivocally expresses its intent to abrogate the immunity and (2) acted pursuant to a valid exercise of power.  *Id.*  Moreover, Congress can abrogate the states' Eleventh Amendment immunity when it acts pursuant to Section Five of the Fourteenth Amendment.  *Early v. S. Univ. & Agr. Mech. Coll. Bd. of Supervisors*, 252 F. App'x 698, 700 (5th Cir. 2007).  Congress has not abrogated the states' immunity for suits under sections 1981, 1983, or

1985.  *Hines v. Miss. Dep't of Corr.*, 239 F.3d 366 (5th Cir. 2000) (Congress did not abrogate the states immunity when passing section 1981); *Will*, 491 U.S. at 67 ("[i]n enacting [section] 1983, Congress did not intend to override well-established immunities or defenses under the common law."); *Early*, 252 Fed. Appx. at 700 (reasoning that Congress did not intend to abrogate state sovereign immunity for section 1985).  Accordingly, this exception does not apply.

The last of these exceptions is that under *Ex Parte Young*, 209 U.S. 123 (1908).  While a suit against an employee in his or her official capacity is a suit against the entity, an exception to immunity exists for plaintiffs seeking prospective injunctive relief against employees acting in their official capacities.  *Carpenter*, 807 F. Supp. 2d at 581 (citations omitted).  Essentially, "[w]here an individual - acting in official capacity - violates the Constitution, the official is thought to not be acting under authority of the state; therefore, that official's immunity is stripped for certain actions."  *Id.*  "The doctrine is limited to that precise situation, and does not apply when the state is the real, substantial party in interest."  *Va. Office for Prot. & Advocacy*, 131 S.Ct. 1632, 1638 (2011) (internal citations and quotations omitted).

"In order to use the *Ex Parte Young* exception, a plaintiff must demonstrate that the state officer has some connection with the enforcement of the disputed act."  *K.P. v. BeBlanc*, 627 F.3d 115, 124 (5th Cir. 2010) (citing *Ex Parte Young*, 209 U.S. at 157).  "The connection requirement exists to prevent litigants from misusing the exception."  *Id.*  Thus, "a plaintiff must show that the defendant state actors 'have the requisite connection to the statutory scheme to remove the Eleventh Amendment barrier to suits brought in federal court against the State.'"  *K.P.*, 627 F.3d at

124 (quoting *Okpalobi v. Foster*, 244 F.3d 405, 410 (5th Cir. 2001)). "The fact that the state officer, by virtue of his office, has some connection with the enforcement of the act [] is the important and material fact." *Ex Parte Young*, 209 U.S. at 157. Ultimately, "the state actor must be connected with an act's enforcement for the exception to apply." *K.P.*, 627 F.3d at 124 (citing *Ex Parte Young*, 209 U.S. 157).

Plaintiff makes a broad prayer for injunctive and declaratory relief for the first time in her Fourth Complaint. Defendants argue that Plaintiff does not specify the type of injunctive relief sought or what alleged conduct by Defendants she seeks to end. (Doc. 87-1 at 16.) Defendants contend that because of the substantial amount of time separating the initial filing and the date injunction was sought proves that there is no substantial threat that irreparable harm will result. (*Id.*) Lastly, Plaintiff has failed to allege facts sufficient to prove any of her alleged causes of action and therefore cannot meet the requisites for injunctive relief. (*Id.* at 17.) Plaintiff states that she has had injury and that the actions of the Defendants can be enjoined. (Doc. 89 at 8.)

"In determining whether the doctrine of *Ex Parte Young* avoids an Eleventh Amendment bar to suit, a court need only conduct 'a straightforward inquiry into whether [the] complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective.'" *Verizon Md., Inc. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002) (quoting *Idaho v. Coeur d'Alene Tribe of Idaho*, 521 U.S. 261, 296 (1997) (O'Connor, J. concurring in part and concurring in judgment)). The Plaintiff does not satisfy this inquiry. Plaintiff continually references harm that has occurred from past actions of the Defendants. Additionally, Plaintiff repeats throughout her

-32-

Complaint that Defendants are liable in damages which are retrospective in nature.  Accordingly, Plaintiff's complaints are not prospective in nature and therefore cannot be used to defeat Eleventh Amendment immunity.

Based on the foregoing, the Eleventh Amendment bars suit against both the DOTD and the Individual Defendants.  Although there are three exceptions to immunity, Plaintiff's claims do not fall under any of them.  Accordingly, Plaintiff's section 1981, 1983, and 1985 claims are barred.

III.     *Fifth and Fourteenth Amendment Claims*

Plaintiff alleges that her rights have been violated under the Fifth and Fourteenth Amendments to the United States Constitution.  (Doc. 80 at ¶¶ 59-61.)  For the reasons that follow, the Court finds that Plaintiff fails to allege sufficient facts in support of these claims.  Accordingly, these claims are dismissed.

Defendants contend that Plaintiff makes no allegations as to how these Amendments were violated, and instead makes bald assertions of violations.  (Doc. 87-1 at 9.)  First, the Defendants argue that the Fifth Amendment is only applicable to the federal government.  (*Id.*)  Next, the Defendants argue that bald allegations of deprivation are insufficient to show that the Defendants violated federal statutory or constitutional law.  (*Id.*)  Plaintiff contends that the law recognizes liability of individuals along with their employer under the Fifth and Fourteenth Amendments when the employee participates in the harassment and violation with the employer.  (Doc. 89 at 8-9.)

"The Equal Protection Clause of the Fourteenth Amendment commands that no State shall deny to any person within its jurisdiction the equal protection of the laws, which is essentially a

direction that all persons similarly situated should be treated alike." *City of Cleburne, Tex. v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985) (quoting *Plyler v. Doe*, 457 U.S. 202, 216 (1982)) (internal quotations omitted).   Similarly, "[t]he Due Process Clause of the Fifth Amendment contains an equal protection component prohibiting the United States from invidiously discriminating between individuals or groups." *Wash. v. Davis*, 426 U.S. 229, 239 (1976) (citing *Bolling v. Sharpe*, 347 U.S. 497 (1954)).   The equal protection obligations imposed by the Fifth and Fourteenth Amendments are indistinguishable.  *Adarand Constructors, Inc. v. Pena*, 515 U.S. 200, 216 (1995).

"[T]o state a claim under the Equal Protection Clause, a . . . plaintiff must either allege that (a) a state actor intentionally discriminated against [her] because of membership in a protected class, or (b) [she] has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment."  *Gibson v. Tex. Dep't of Ins. - Div. of Workers' Comp.*, 700 F.3d 227, 238 (5th Cir. 2012) (internal citations and quotations omitted). "Petitioner must show that defendants acted with a discriminatory purpose and thus cannot base an equal protection claim solely on a personal belief that he was a victim of discrimination." *Kossie v. Crain*, 602 F. Supp. 2d 786, 792 (S.D. Tex, 2009) (citing *Woods v. Edwards*, 51 F.3d 577, 580 (5th Cir. 1995)).   "Vague and conclusory allegations are insufficient to raise an equal protection claim." *Kossie*, 602 F. Supp. 2d at 792 (citing *Pedraza v. Meyer*, 919 F.2d 317, 318 n. 1 (5th Cir. 1990)).

Plaintiff's Complaint does not adequately allege that she was intentionally discriminated against because of her race or gender or that she was intentionally treated differently from others

similarly situated without a rational basis.  Plaintiff's Complaint is rife with conclusory and bald assertions that are insufficient to show intentional conduct on behalf of the Defendants.  As such, Plaintiff's Complaint is insufficient to raise an equal protection claim.  Accordingly, Plaintiff's request for relief under the Fifth and Fourteenth Amendments are dismissed.

IV.    *Family and Medical Leave Act of 1993*

Plaintiff alleges that the DOTD has violated her rights under the Family and Medical Leave Act of 1993 ("FMLA").  The Court finds, however, that Plaintiff does not allege sufficient facts to support this claim.  Accordingly, this claim is dismissed.

Plaintiff alleges that the DOTD has demanded medical information from her, that she was followed home and watched while on leave under the FMLA, that there are white employees on leave under the FMLA and that they are not questioned, and that she is the only employee out of 350 that receives harassment regarding family leave.  (Doc. 80 at ¶¶ 23-27.)  Plaintiff states that her claim under the FMLA does not involve a return to work, it involves a retaliation for exercising medical leave rights.  (Doc. 89 at 10.)

Defendants assert that Plaintiff makes no allegations as to how Defendants violated the FMLA. (Doc. 87-1 at 9.) Defendants contend that Plaintiff was allowed leave time under the FMLA and that she remains in the same position since August of 2007. (*Id.* at 10.) Defendants argue that because Plaintiff was not deprived of her rights or retaliated against upon return from leave, she cannot state a *prima facie* case under the FMLA. (*Id.*)

"The Family Medical Leave Act of 1993 was enacted to permit employees to take

reasonable leave for medical reasons, for birth or adoption of a child, and for the care of a child, spouse, or parent who has a serious health condition." *Bocalbos v. Nat'l W. Life Ins. Co.*, 162 F.3d 379, 382 (5th Cir. 1988) (citing 29 U.S.C. § 2601(b)(1) & (2)). The FMLA makes it "unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise" any rights under the FMLA. 29 U.S.C. § 2615(a)(1). Moreover, an employer is prohibited from discriminating or retaliating against an employee for exercising his or her rights under the FMLA. 29 U.S.C. § 2615(a)(2). Ultimately, to establish a *prima facie* case of retaliation under the FMLA, a plaintiff must show that: (1) she is protected under the FMLA; (2) she suffered an adverse employment decision; and (3) either she was treated less favorably than an employee who had not requested leave under the FMLA or the adverse decision was made because of plaintiff's request for leave. *Bocalbos*, 162 F.3d at 383.

Plaintiff fails to meet both the second and third prong. Plaintiff's Complaint alleges no clear or coherent facts in relation to: when she took leave, what adverse employment action was taken against her, and/or how she was treated less favorably than an employee who had not requested leave. Plaintiff does not allege that she was fired, denied leave, discharged, demoted, or was not compensated for exercising her rights under the FMLA. While Plaintiff does contend that medical information was requested of her in violation of the FMLA, this is not a violation. *See* 29 U.S.C. § 2613(a) (an employer may require that a request for FMLA leave be supported by a certification issued by the employee's health care provider). What is clear from Plaintiff's Complaint is that Plaintiff continues to retain her position as supervisor and has not been denied leave. Ultimately,

Plaintiff fails at pleading sufficient facts to support the second and third elements required to show a *prima facie* case of retaliation under the FMLA.  Accordingly, this claim must be dismissed.

V.      *General Louisiana Whistle Blower Statute*

Plaintiff alleges that Defendants have violated her rights under the General Louisiana Whistle Blower Statute, La. Rev. Stat. Ann. § 23:967, *et. seq.*  (Doc. 80 at ¶¶ 66-69.)  For the following reasons the Court finds that Plaintiff fails to state a claim upon which relief can be granted and dismisses this claim.

Plaintiff contends that rather than address concerns regarding bogus EEOC complaints made against her, the agency has ignored her complaints and, in concert with certain individual employees, continued the illegal and wasteful practices of illegal and bonus investigations by the agency's EEOC office."  (Doc. 89 at 11.)

Defendants aver that Plaintiff cannot state a cause of action under Louisiana General Whistle Blower Statute ("LWBS").  First, Defendants aver that Plaintiff has not alleged and cannot established a violation of state law which she reported to the DOTD and refused to participate. Defendants further argue that Plaintiff has not suffered a reprisal.

The LWBS provides that "an employer shall not take reprisal against an employee who in good faith, and after advising the employer of the violation of law: (1) discloses or threatens to disclose a workplace act or practice that is in violation of state law . . . (3) objects to or refuses to participate in an employment act or practice that is in violation of state law."  La. Rev. Stat. Ann.

§ 23:967(A)(1) & (3).  "Reprisal includes firing, layoff, loss of benefits, or any discriminatory action the court finds was taken as a result of an action by the employee . . . however, nothing in this Section shall prohibit an employer from enforcing an established employment policy, procedure, or practice or exempt an employee from compliance with such."  La. Rev. Stat. Ann. § 23:967(C)(1). "Louisiana appellate courts have repeatedly held that in order to establish a claim under the [LWBS], an employee must prove that her employer committed an actual violation of state law." *Johnston v. Ga. Pac., LLC*, No. 08-169-JJB, 2009 WL 2849619, at *4 (M.D. La. Sept. 3, 2009) (citations omitted).

The alleged violations of law or unlawful conduct complained of by the Plaintiff concern the practices of investigating several, allegedly bogus, EEOC complaints against her.  The Plaintiff's factual allegations regarding the Defendants' employment practices fail to disclose a violation of state law, which is an essential element of the a plaintiff's claim.  Even if Plaintiff could state a violation of state law, Plaintiff fails to allege that she suffered "reprisal" as defined under the statute.  Accordingly, because the Plaintiff has identified no employment act or practice which constitutes a violation of law, and because she fails to allege that any reprisal was taken against her, her LWBS claim must fail as a matter of law.  As such, Plaintiff's claim under the Louisiana General Whistle Blower Statute is dismissed.

VI.     *Public Louisiana Whistle Blower Statute*

Plaintiff asserts that "no complaint has been made to the commission as of this date." (Doc. 89 at 11.)  As such, Plaintiff represents that this claim is abandoned.  (*Id.*)  Accordingly, this claim

-38-

is dismissed.

VII.    *Louisiana General Tort Law*

Plaintiff alleges that Defendants have violated Louisiana tort law by committing the tort of intentional infliction of emotional distress ("IIED"). (Doc. 80 at ¶¶ 74-78.) Plaintiff refers the Court to Exhibits A and B to support this claim.  Plaintiff, however, failed to attach these exhibits to the Fourth Complaint or her opposition to the Motion to Dismiss. (*See* Docs. 80, 89.) In further support Plaintiff states that her family is not welcome at work, that she went through a side entrance to avoid time delays and that it is now password protected for security reasons, the culprit was not identified when her door was glued, she was questioned as to how often her husband and kids were seen at her office and forced to work through these questions,  that employees are afraid to have any association with her because they become a victim, that she was excluded from a Thanksgiving luncheon, two employees on probation were seen in her office and were subsequently mistreated and fired, and in 2008 she was forced to process new white hires which was an insult to her.  (Doc. 89 at 12.)  Thus, Plaintiff contends that "Defendant's actions are far beyond the pale of what is expected in a civilized society, and defendant has intentionally inflicted said emotional distress as a way of forcing Plaintiff and others to resign or retire." (Doc. 80 at ¶77.)

Defendants note that although this is Plaintiff's fourth attempt to amend, she has made no new allegations sufficient to constitute IIED under Louisiana law.  Defendants contend that Plaintiff has not alleged any action by Defendants which would rise to a level of outrageous in character, extreme in degree, or utterly intolerable in a civil society.  (Doc. 87-1 at 13.)

A.    <u>Intentional Infliction of Emotional Distress</u>

To prevail on a claim of intentional infliction of emotional distress, a plaintiff must prove: (1) that the conduct of the defendant was extreme or outrageous; (2) that the emotional distress of the plaintiff was severe; and 3) that the defendant desired to inflict severe emotional distress or knew that severe emotional distress would be certain or substantially certain to result from [its] conduct.  *Wash. v. Mother Works, Inc.*, 197 F. Supp. 2d 569, 572 (E.D. La. Apr. 16, 2002) (citing *White v. Monsanto, Co.*, 585 So. 2d 1205, 1209, (La. 1991)).  "Liability does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities."  *White*, 585 So. 2d at 1209.  Ultimately, the conduct of the defendant must be "so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community."  *Id.*

"[C]ases arising in the workplace are limited to situations where the distress is more than a reasonable person could be expected to endure and the offending conduct is intended or calculated to cause severe emotional distress."  *Wash.*, 197 F. Supp. 2d at 572 (quoting *Nicholas v. Allstate Ins. Co.*, 765 So. 2d 1017, 1027 (La. 2000)) (internal quotations omitted).  Louisiana courts have limited an IIED cause of action in the workplace to cases which involve a pattern of deliberate, repeated harassment over a period of time.  *Bertaut v. Folger Coffee Co.*, No. 06-2437, 2006 WL 2513175, at *3 (E.D. La., Aug. 29, 2006) (citing *Nicholas*, 765 So. 2d at 1017; *White*, 585 So. 2d at 1209; *Maggio v. St. Francis Med. Ctr., Inc.*, 391 So. 2d 948 (La. App. 2 Cir. 1980)).  Employment disputes, even those involving discrimination and harassment, will rarely rise to the

level of intentional infliction of emotional distress. *Bertaut,* 2006 WL 2513175 at *4 (citations omitted). Ultimately, "[c]onduct in the workplace, even if calculated to cause some degree of mental anguish will rarely be so severe that it will rise to the level of outrageous conduct." *Bertaut*, 2006 WL 2513175, at *4 (citing *Deus v. Allstate Ins. Co.*, 15 F.3d 506, 514 (5th Cir. 1994)).

Plaintiff alleges that she was subject to harassment, retaliation, and a hostile work environment. Even if accepted as true, however, Plaintiff's Complaint lacks sufficient allegations to support that the harassment she allegedly suffered was more than a reasonable person could be expected to endure or that the Defendants conduct was intended or calculated to cause severe emotional distress. Courts routinely dismiss causes of action for IIED where the pleadings exhibit actions more severe and specific than those alleged in the instant matter. *See, e.g., Stewart v. Parish of Jefferson*, 668 So. 2d 1292 (La. App. 5th Cir. 1996) (no cause of action for IIED even though a supervisor harassed plaintiff-employee for two-years in which he questioned the employee's personal life, increased the workload, and pressured the employee to accept a demotion which ultimately led to the employee's termination); *Wash.*, 197 F. Supp. 2d at 572-3 (repeated racial slurs, ridicule for missing work to care for a mother who was suffering from cancer, differing treatment than other managers, and termination did not rise to a level of extreme and outrageous such that plaintiff-employee would prevail on her IIED claim); *Beaudoin v. Hartford Acc. & Indem. Co.*, 594 So. 2d 1049 (La. App. 3 Cir. 1992) (a supervisor engaging in eight months of harassment including shouting, cursing, calling employee names, commenting on the inferiority of women, and falsely accusing employee of making mistakes did not constitute extreme and outrageous conduct

even though employee felt singled out for abuse).

Accordingly, Plaintiff has not met the burden of alleging sufficient facts to support the essential elements of an IIED claim.  Accordingly, this claim is dismissed.

      B.    <u>Conspiracy to Commit Intentional Infliction of Emotional Distress</u>

In Plaintiff's Complaint she alleges only intentional infliction of emotional distress, however in her opposition brief she alleges conspiracy to commit intentional infliction of emotional distress. In an abundance of caution, the Court will address this claim.

Louisiana Code of Civil Procedure Article 2324(A) provides that "[h]e who conspires with another person to commit an intentional or willful act is answerable, *in solido*, with that person, for the damage caused by such act."  "Louisiana does not recognize an independent tort of civil conspiracy."  *Conwill v. Greenberg Traurig, LLP*, No. 09-4356, 2010 WL 3021553, at *6 (E.D. La., July 29, 2010).  Thus, the underlying tort must be actionable.  *Rhyce v. Martin*, 173 F. Supp. 2d 521, 535 (E.D. La. 2001).  As discussed, *infra*, Plaintiff cannot establish an IIED claim and therefore cannot prove conspiracy of such.  Accordingly, Plaintiff's claim for conspiracy to commit intentional infliction of emotional distress is dismissed.

**CONCLUSION**

For the foregoing reasons Defendants' Motion to Dismiss (Doc. 87) is GRANTED. Accordingly, Plaintiff's claims are DISMISSED WITH PREJUDICE.

Judgment shall be entered in accordance with this Order.

New Orleans, Louisiana on this 4th day of March, 2013.

**JANE TRICHE MILAZZO**
**UNITED STATES DISTRICT COURT JUDGE**